**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

PETER DEITRICK,

               Plaintiff,

- against -

INWOOD FARMS, LLC,

               Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**Docket No.**

**COMPLAINT**

**PLAINTIFF DEMANDS**
**A TRIAL BY JURY**

Plaintiff PETER DEITRICK, by his attorneys, PHILLIPS & ASSOCIATES, Attorneys at Law, PLLC, hereby complains of Defendant INWOOD FARMS, LLC, upon information and belief, as follows:

**NATURE OF THE CASE**

1. Plaintiff PETER DEITRICK complains pursuant to the **Americans with Disabilities Act of 1990**, 42 U.S.C. § 12101, *et seq*. ("ADA"), the **New York State Human Rights Law**, New York State Executive Law § 296, *et seq.* ("NYSHRL"), and the **New York City Human Rights Law,** New York City Administrative Code § 8-107(1), et seq., and seeks damages to redress the injuries Plaintiff suffered as a result of failing to accommodate Plaintiff's disability and being **discriminated** and **retaliated** against by his employer solely on the basis of his **perceived and/or actual disabilities (generalized anxiety disorder)**.

2. Despite Plaintiff's qualifications and ability to execute the functions of his job, Defendant denied Plaintiff a reasonable accommodation for his disability and made no effort to engage in an interactive process. Furthermore, Defendant terminated Plaintiff's employment under the facade that Plaintiff's disability was affecting the quality of his work, while perpetuating the outdated stereotypes of the mentally ill as cumbersome and underperforming employees to justify its actions.

**JURISDICTION AND VENUE**

3. Jurisdiction of this Court is proper under 42 U.S.C. § 12101, et. seq., and 28 U.S.C. §§ 1331 and 1343.

4. The Court has supplemental jurisdiction over the claims of Plaintiff brought under state and city law pursuant to 28 U.S.C. §1367.

5. Venue is proper in this district in that a substantial part of the events or omissions giving rise to the claims occurred within the Southern District of the State of New York. 28 U.S.C. §1391(b).

**PROCEDURAL PREREQUISITES**

6. Plaintiff timely filed a Charge of Discrimination upon which this Complaint is based with the Equal Employment Opportunity Commission ("EEOC").

7. Plaintiff received a Notice of Right to Sue from the EEOC, dated October 6, 2022, concerning the herein charges of discrimination.  A copy of the Notice is annexed hereto.

8. This action is being commenced within 90 days of receipt of said Notice of Right to Sue.

**PARTIES**

9. Plaintiff PETER DEITRICK (hereinafter "Plaintiff") is a resident of the State of New Jersey, Hudson County.

10. At all relevant times, Plaintiff was employed as Executive Chef by INWOOD FARMS, LLC, at their restaurant located at 600 W 218th Street, New York, NY 10034.

11. Defendant INWOOD FARMS, LLC (hereinafter, "Defendant"), is a domestic limited liability company engaged in the business of providing hospitality and food services.

12. Defendant is an "employer" under the relevant statutes.

13.   At all relevant times, Plaintiff was an employee of Defendant.

## MATERIAL FACTS

14.   On or about March 2021, Plaintiff began working for Defendant as the Executive Chef, earning $62,500. Plaintiff's annual salary remained the same at the time he was terminated.

15.   At all relevant times, Tom Bosco ("Bosco"), owner of Defendant's restaurant, The Inwood Farm (hereinafter the "Restaurant"), and Christine Ramos ("Ramos"), General Manager of the Restaurant, were Plaintiff's direct supervisors.

16.   During his tenure, Plaintiff's work performance met or exceeded Defendant's legitimate expectations. Plaintiff is a seasoned chef, accruing over seventeen years of experience and garnering a feature in Forbes, highlighting Plaintiff's skills as a chef, and detailing the anticipation surrounding his latest culinary venture with Defendant.

17.   Shortly after beginning his tenure with Defendant, Plaintiff attended an introductory meeting with Defendant's management team—which both Bosco and Ramos attended, as well.

18.   During this meeting, as benefits of his employment, Plaintiff was promised profit sharing, medical benefits that were to begin on April 1, 2021, and also press exposure in publications such as Vanity Fair, The New York Post, and other outlets.

19.   Near the end of this meeting, Bosco and Ramos asked Plaintiff if he needed anything else. At this time, Plaintiff took the opportunity to notify them both that he had been formally diagnosed with and currently suffers from generalized anxiety disorder.

20.   Immediately after this meeting where Plaintiff disclosed his impairment, Defendants pushed back the date Plaintiff could receive medical benefits to May 1, 2021.  However, Plaintiff ultimately never received these benefits promised to him.

21.   Following the meeting with Bosco and Ramos, Plaintiff's anxiety was often brought up in

conversation at least once a week, if not more.

22.  For example, Plaintiff often had to take trips to a nearby grocery store in order to procure items for kitchen service. When he would do so, Plaintiff was routinely questioned as to whether he needed to leave the Restaurant because of his anxiety.

23.  Moreover, when Plaintiff used the restroom, he similarly regularly returned to probing from Bosco and Ramos, asking whether he had left the kitchen to confront his anxiety disorder.

24.  Over the course of his seventeen-year career as a chef, Plaintiff has never had an ordeal with anxiety in any kitchen he has worked in, including Defendant's.

25.  From about March 2021 to the end of June 2021, Plaintiff excelled in his position which was recognized by Defendants. In fact, upon information and belief, with Plaintiff as Executive Chef of the Restaurant, the Restaurant recorded many record-breaking weeks in sales and profits.

26.  From July 2, 2021, to July 5, 2021, Plaintiff was out of town on a scheduled vacation. Without warning, on or about July 4, 2021, Plaintiff's employment was terminated by Bosco via text message and an accompanying email.

27.  In the accompanying email, Bosco made several false allegations against Plaintiff which served as pretext to terminate Plaintiff's employment.

28.  Specifically, Bosco accused Plaintiff of not keeping a clean kitchen.

29.  During his tenure with Defendant, Plaintiff had never been approached or otherwise reprimanded about the cleanliness of the kitchen and/or other facilities at the Restaurant.

30.  Moreover, Bosco accused Plaintiff of not being able to retain employees. Defendants previously never questioned Plaintiff regarding his ability to retain employees.

31.  Bosco further alleged that Plaintiff did not create any menu items during his tenure as Executive Chef which was untrue.

32. On the contrary, Defendant still features dishes created by Plaintiff on its menu, which also still lists Plaintiff's name, per Defendant's website, even though Defendants terminated Plaintiff. Pictures of dishes created by Plaintiff are also still featured on the Restaurant's Instagram profile.

33. Sometime after his termination and upon returning from his vacation, Plaintiff attended an exit interview with Bosco.

34. During the exit interview, Bosco alleged that there had been issues with Plaintiff since "day one," despite the absence of any verbal or written reprimands, warnings, or disciplinary action ever taken against Plaintiff.

35. Bosco further stated that purported "issues since day one" "had to do with Plaintiff's anxiety."

36. At the time of Plaintiff's termination in early July 2021, Plaintiff had still not received any medical benefits, as he had been promised he would receive first on April 1, and then May 1, 2021.

37. As a result, Plaintiff was forced to bear the large personal costs of approximately $400 per month to visit a specialist who treated Plaintiff for his anxiety disorder.

38. Furthermore, about a week after the date of his termination, Plaintiff was scheduled to meet with Bosco and Ramos to discuss the details of the profit-sharing Plaintiff was similarly promised upon beginning his employment with Defendant.

39. Upon information and belief, Plaintiff was terminated without cause as both a pretext to discriminate against him because of his anxiety disorder, and also to avoid conferring to him medical benefits and profit-sharing, as Bosco and Ramos promised him.

40. Defendant did not have a justifiable nor reasonable excuse in terminating Plaintiff's employment.

5

41. Plaintiff has been unable, despite reasonable efforts, to find comparable employment.

42. Defendant's stated reason(s) for terminating Plaintiff's employment was pretextual.

43. But for Plaintiff's disability, perceived disability and/or need for a reasonable accommodation, Defendant would not have terminated his employment.

44. Upon information and belief, Defendant is aware of its obligations under the ADA and the NYSHRL.

45. As a result of Defendant's action, Plaintiff feels extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

46. As a result of the acts and conduct complained of herein, Plaintiff has suffered a loss of income, the loss of a salary, bonus, benefits, and other compensation which such employment entails. Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional and physical distress.

47. Plaintiff was, and remains, a qualified individual who can perform the essential functions of his employment with or without a reasonable accommodation as defined by § 12111(8) of the ADA.

48. Defendant's conduct was malicious, willful, outrageous, and conducted with full knowledge of the law, and/or violation thereof.

49. As such, Plaintiff demands punitive damages against Defendant.

## AS A FIRST CAUSE OF ACTION
## FOR DISCRIMINATION UNDER THE ADA

50.  Plaintiff repeats, reiterates, and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

51.  Plaintiff claims Defendant violated the Americans with Disabilities Act of 1990 (Pub. L. 101-336) (ADA), as amended, as these titles appear in volume 42 of the United States Code, beginning at section 12101.

52.  Title 42 of the Americans with Disabilities Act of 1990, Chapter 126, Subchapter I, Section 12112, Discrimination [Section 102] states: "(a) General rule. - No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

53.  Plaintiff's anxiety disorder qualifies as a disability within the meaning of the ADA.

54.  Defendant engaged in an unlawful discriminatory practice by discriminating against Plaintiff because of his disability (anxiety disorder).

55.  Defendants discriminated against Plaintiff on the basis of his disability, in violation of the ADA, by creating, fostering, condoning, accepting, ratifying, and/or negligently failing to prevent or remedy a hostile work environment that included, among other things, severe or pervasive harassment of Plaintiff based on his disability.

56.  As a result of the unlawful discriminatory conduct of Defendant in violation of the ADA, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

57.  The unlawful discriminatory actions of Defendants constitute malicious, willful, and wanton

7

violations of the ADA, for which Plaintiff is entitled to an award of punitive damages.

## AS A SECOND CAUSE OF ACTION
## FOR RETALIATION UNDER THE ADA

58.   Plaintiff repeats, reiterates, and realleges each and every paragraph above as if said paragraph

was more fully set forth herein at length.

59.   The ADA prohibits retaliation, interference, coercion, or intimidation.

60.   42 U.S.C. § 12203 provides:

   a.   Retaliation. No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

   b.   Interference, coercion, or intimidation. It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.

61.   Defendant INWOOD FARMS, LLC, violated this section as set forth herein by taking

adverse employment action against Plaintiff by terminating Plaintiff's employment after his

request for a reasonable accommodation.

## AS A THIRD CAUSE OF ACTION
## FOR DISCRIMINATION UNDER NEW YORK STATE EXECUTIVE LAW

62.   Plaintiff repeats, reiterates and realleges each and every allegation made in the above

paragraphs of this Complaint as if more fully set forth herein at length.

63.   Executive Law § 296 provides that:

   It shall be an unlawful discriminatory practice: "(a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, **disability**, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or

privileges of employment."

64.  As described above, Defendants discriminated against Plaintiff on the basis of his disability, in violation of NYSHRL, by creating, fostering, condoning, accepting, ratifying, and/or negligently failing to prevent or remedy a hostile work environment that included, among other things, harassment of Plaintiff based on Plaintiff's disability. As a result of Defendants' unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered and continues to suffer economic loss, for which he is entitled to an award of monetary damages and other relief.

65.  As a result of Defendant's unlawful discriminatory conduct in violation of NYSHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, and emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

66.  Defendant's unlawful discriminatory actions constitute malicious, willful, and wanton violations of the NYSHRL, for which Plaintiff is entitled to an award of punitive damages.

### AS A FOURTH CAUSE OF ACTION FOR RETALIATION UNDER THE NEW YORK STATE EXECUTIVE LAW

67.  Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

68.  Executive Law § 296 provides that, "7. It shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has filed a complaint, testified, or assisted in any proceeding under this article."

69.  Defendant engaged in an unlawful discriminatory practice by discriminating against Plaintiff because of his opposition to the unlawful employment practices of Defendant.

70.     Defendant terminated Plaintiff in retaliation for requesting reasonable accommodations for her disability.

## AS A FIFTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER NEW YORK CITY ADMINISTRATIVE CODE

71.     Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

72.      The Administrative Code of City of New York § 8-107(1)(a) provides that

> It shall be an unlawful discriminatory practice: for an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, **disability**, marital status, partnership status, caregiver status, sexual and reproductive health decisions, sexual orientation, uniformed service or alienage or citizenship status of any person... to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

73.     As described above, Defendants discriminated against Plaintiff on the basis of his disability in violation of the NYCHRL by, including but not limited to, subjecting him to disparate working conditions, and denying him the opportunity to work in an employment setting free of unlawful discrimination and harassment. As a result of Defendants' unlawful discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered and continues to suffer economic loss, for which he is entitled to an award of monetary damages and other relief.

74.     As a result of Defendants' unlawful discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

75.     Defendants' unlawful discriminatory actions constitute violations of the NYCHRL that amount to willful or wanton negligence, recklessness, and involve a conscious disregard of the rights of others or conduct so reckless as to amount to such disregard for which Plaintiff is entitled to an award of punitive damages.

### AS A SIXTH CAUSE OF ACTION FOR RETALIATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

76.     Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

77.     The New York City Administrative Code §8-107(7) provides that it shall be unlawful discriminatory practice: "For an employer . . . to discharge . . . or otherwise discriminate against any person because such person **has opposed any practices** forbidden under this chapter. . ."

78.     Defendant violated the section cited herein as set forth.

### JURY DEMAND

79.     Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendant:

A.     Declaring that Defendant engaged in unlawful employment practices prohibited by the **Americans with Disabilities Act of 1990**, 42 U.S.C. § 12101, et seq. ("ADA"), the **New York State Human Rights Law**, New York State Executive Law, § 296 ("NYSHRL"), and the **New York City Human Rights Law**, New York City Administrative Code § 8-107 *et seq.* ("NYCHRL") in that Defendant discriminated and retaliated against Plaintiff on the basis of his disability (anxiety disorder);

B.     Awarding damages to Plaintiff for all lost wages and benefits resulting from Defendant's unlawful discrimination and retaliation, and to otherwise make his whole for any losses suffered as a result of such unlawful employment practices;

11

C.     Awarding Plaintiff compensatory damages for mental, emotional and physical injury, emotional distress, pain and suffering and injury to his reputation in an amount to be proven;

D.     Awarding Plaintiff liquidated damages;

E.     Awarding Plaintiff punitive damages;

F.     Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action; and

G.     Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy Defendants' unlawful employment practices.

Dated:  Garden City, New York
        November 4, 2022

**PHILLIPS & ASSOCIATES,
ATTORNEYS AT LAW, PLLC**

By:_____/s/_____
      Joshua M. Friedman, Esq.
      *Attorneys for Plaintiff*
      585 Stewart Avenue, Suite 410
      Garden City, New York 11530
      T: (212) 248-7431
      F: (212) 901-2107
      jfriedman@tpglaws.com
