UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

PETER DEITRICK,

                    Plaintiff,

-against-

INWOOD FARMS, LLC,

                    Defendant.

22-CV-9466 (LAP)


OPINION AND ORDER

---

LORETTA A. PRESKA, Senior United States District Judge:

Before the Court is Defendant Inwood Farms, LLC's motion for summary judgment on all claims asserted by Plaintiff Peter Deitrick. For the reasons set forth below, Defendant's motion is GRANTED as to Counts I, II, IV, and VI. Furthermore, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state and local claims.[1]

---

[1] Defendant submitted the following documents in support of its motion: Defendant's Memorandum of Law in Support of Summary Judgment (Dkt. 21, "Def. Mem."); the Declaration of Albert M. Myers, Esq. (Dkt. 22, "Myers Decl."), with the following exhibits appended: the deposition transcript of Peter Deitrick, taken December 4, 2023 (Ex. 1, ("Pl. Dep." [Dkt. 22-1])); the deposition transcript of Thomas Bosco, taken December 21, 2023 (Ex. 2, ("Bosco Dep." [Dkt. 22-2])); Defendant's responses to Plaintiff's First Set of Interrogatories (Ex. 3, [Dkt. 22-3]); the Executive Chef Job Description & Expectations (Ex. 4, [Dkt. 22-4]); the Inwood Discipline Procedure (Ex. 5, [Dkt. 22-5]); the Inwood Farms Employee Handbook (Ex. 6, [Dkt. 22-6]); thirteen Internal Incident Statement reports (Ex. 7, [Dkt. 22-7]); the unsworn statement of Jalil Greene (Ex. 8 at D0101 ("Greene Statement")), to which Plaintiff has objected as inadmissible hearsay (Pl. 56.1 ¶ 22), and the sworn affidavits of Leticia Moya (Ex. 8 at D0036–D0038, ("Moya Aff.")), Eutiquio Ortiz (Ex. 8 at D0034 ("Ortiz Aff.")), Candy Feliz (Ex. 8 at D0035, ("Feliz Aff.")), and Haydee Ruiz (Ex. 8 at D0039 ("Ruiz Aff.")) ([Dkt. 22-8]); the termination letter dated July 1, 2021 (Ex. 9 ("Termination Letter")) [Dkt. 22-9]; text messages between Plaintiff and Bosco (Ex. 10) [Dkt. 22-10]; the Declaration of Angel Galinda (Ex. 11, ("Galinda Decl.")) [Dkt. 22-11]; and a 2023 doctor's letter (Ex. 12) [Dkt. 22-12]; Defendant's Rule 56.1 Statement of Material Facts (cont'd)

Case 1:22-cv-09466-LAP    Document 37    Filed 03/31/26    Page 2 of 34

**FACTUAL BACKGROUND**

## A. Plaintiff's Hiring

Plaintiff Peter Deitrick ("Plaintiff") was hired by Defendant Inwood Farms, LLC ("Inwood" or "Defendant") in late March 2021 as Executive Chef of Inwood's restaurant.  (Def. 56.1 ¶ 7; Pl. 56.1 ¶ 7 (undisputed).)  Inwood is operated by Thomas Bosco ("Bosco"), its owner and principal.  (Def. Mem. at 3.)  At the time of the relevant events, Christine Ramos ("Ramos") served as Inwood's General Manager.  (Compl. ¶ 15.)

As Inwood's Executive Chef, Plaintiff was responsible for all kitchen operations, including recruiting, training, and supervising kitchen staff, complying with health regulations, and maintaining food quality.  (Ex. 4 at 2-3.)  Plaintiff was expected to be a "true leader and team player" who would "lead[] from the front at all times" and "jump[] in with the team."  (Id. at 2.)

---

(cont'd) (Dkt. 20-1 ("Def. 56.1")); Defendant's Reply Memorandum of Law (Dkt. 32 ("Def. Reply")); and the Reply Declaration of Albert M.  Myers (Dkt. 31 ("Reply Myers Decl.")).  Where the exhibits attached to the Myers declarations have Bates numbers, the Court's pincites refer to those Bates numbers. Otherwise, the Court refers to the ECF-assigned page number.

Plaintiff submitted the following papers in opposition to the motion: Plaintiff's Memorandum of Law in Opposition to Summary Judgment (Dkt. 30 ("Pl. Mem.")); the Declaration of Peter Deitrick (Dkt. 28 ("Pl. Decl.")); the Declaration of Joseph Myers (Dkt. 27 ("J.  Myers Decl.")), with the following exhibits appended: Plaintiff's deposition testimony ("Pl. Ex. A"); Bosco's deposition testimony ("Pl. Ex. B"); text messages from Bosco to Plaintiff ("Pl. Ex.  C"), the Termination Letter ("Pl. Ex.  D"), the Employee Handbook ("Pl. Ex.  E"), the Disciplinary Procedure ("Pl. Ex.  F"), Internal Incident Statement Records ("Pl. Ex.  G"), and a letter from Dr. Brian Buggie dated May 26, 2023 ("Pl. Ex.  H"); and Plaintiff's Rule 56.1 Counter-Statement (Dkt. 29, "Pl. 56.1").

2

Accordingly, Plaintiff was required to work a minimum of 50 hours per week with "full open availability."  (Id. at 3.)

Inwood's employee handbook (the "Handbook"), which Plaintiff signed, stated that Plaintiff was an at-will employee and that Inwood "may choose to part ways with you for any reason, at any time, without notice."  (Ex. 6 at D0079.)  The Handbook also provided that Plaintiff's first ninety days at Inwood would be an "Introductory Period" in which management would decide whether to retain Plaintiff.  (Ex. 6 at D0080.)  Finally, the Handbook contained standard provisions prohibiting sexual harassment, threats of violence, on-the-job alcohol and drug use, and host of other activities, including "excessive absenteeism or tardiness, or any absence without notice." (Handbook at D0089.)

## B. Plaintiff's Termination

Approximately three months into his tenure at Inwood, on or about July 1, 2021, Plaintiff was terminated by Defendant.  (Def. 56.1 ¶ 34 (undisputed); Termination Letter at 2.)  The Termination Letter states that the decision to terminate Plaintiff was based on, among other things, Plaintiff's prohibited workplace behavior (including lewd references to his genitalia), unauthorized absences, failure to participate in cleaning duties, dishonesty, precipitation of other employees' departures, unapproved vacation, and failure to perform duties. (Termination Letter at 2–3.)  Moya stated that Plaintiff was shown the Termination Letter at his exit

interview, that Bosco "went through each point with Peter outlined in the letter explaining the termination," and that "Peter did not contest the reasons for termination." (Moya. Aff. at D0037.) Plaintiff admits that he received the letter but did not substantively respond at the time. (Pl. Dep. 116:4.)

Defendant has also produced extensive evidence corroborating the allegations in the Termination Letter, including thirteen contemporaneous handwritten write-ups of Plaintiff's purported misconduct (Ex. 7), five sworn statements from Inwood Farms personnel (Moya Aff. at D0036-D0038; Ortiz Aff. at D0034; Feliz Aff. at D0035; Ruiz Aff. at D0039; Galinda Decl. at 1), and contemporaneous text messages with Plaintiff (Ex. 10). Bosco also testified that "when I terminated Peter's employment, it was because of the totality of [these] things." (Bosco Dep. 72:23-24).

These documented allegations, all of which Plaintiff denies, are summarized below.

i.    Sexual Harassment

According to Defendant's records, on April 1, 2021—Plaintiff's first day of work—Plaintiff slapped the posterior of a female employee, who immediately quit. (Ex. 7 at P000030; Def. 56.1 ¶ 8.) That same day, Plaintiff allegedly discussed his genitalia and its size in front of Bosco and Ramos. (Ex. 7 at P000031; Def. 56.1 ¶ 9.) On May 20, 2021, Plaintiff allegedly

4

brought up his sexual exploits with former co-workers and bragged about them to Moya. (Ex. 7 at P000035; Def. 56.1 ¶ 14.)  On June 25, 2021, Plaintiff allegedly lured Moya to the rear of the kitchen and, over her protests, exposed his chest and a rash on his back. (Ex. 7 at P000042; Def. 56.1 ¶ 20.)

Moya has independently testified to several incidents of harassment.  First, Moya states that she was made "very uncomfortable" because Plaintiff "went on to great lengths to brag about his sexual relations with other waitresses" and "alluded to not having any trouble in the bedroom due to his penis size." (Moya Aff. at D0036).  Moya's affidavit also states that Plaintiff "insisted on showing me [his back and abdomen] by taking off his shirt in the prep kitchen of the restaurant" after she twice declined Plaintiff's invitation.  (Moya Aff. at D0036.)  And Feliz, an advisor to Inwood, stated that Bosco contacted her in May of 2021 asking for help regarding Plaintiff's "harassment of employees."  (Feliz Aff. at D0035.)[2]

Defendant also submitted an unsworn statement from former employee Jalil Greene to corroborate the allegations of sexual harassment.  (Ex. 8 at D0101.)  In Greene's statement, Greene

---

[2] Plaintiff objects to Feliz's statements as hearsay to the extent it includes or relies on the secondhand statements of Bosco. (Pl. 56.1 at 29.)  Accordingly, the Court does not consider these statements for their truth, but only as evidence of Bosco's state of mind.  Feliz's statements and recommendations to Bosco are likewise admissible for their effect of the listener (Bosco) and his motivation for terminating Plaintiff.

states that (i) Plaintiff was "always mentioning his genitalia," (ii) that Plaintiff "touched [a former employee] inappropriately," and (iii) that Greene informed management of this incident. (Id.) Plaintiff has objected to these statements as inadmissible hearsay. (Pl. 56.1 ¶ 22.) Because the Greene statement is unsworn, it does not comply with Rule 56(c)(4) and cannot be considered for the truth of the matters asserted therein. Moreover, Greene's statement was made years after Plaintiff was terminated, meaning that it is not independently admissible for its effect on Bosco or other management. Accordingly, the Court does not rely on the Greene Statement in resolving this motion.

### ii. Absenteeism

Defendant's records document repeated instances of Plaintiff leaving the kitchen for prolonged, unexplained periods. For example, on April 24, 2021, Plaintiff was absent from the kitchen for multiple prolonged periods, as observed by four employees, and was found walking in a nearby park. (Ex. 7 at P000032; Def. 56.1 ¶ 10.) Separately, on May 12, 2021, Plaintiff was absent from the kitchen over six times for more than twenty minutes each, leading to slowed service and customer complaints. Plaintiff was again found in the park. (Ex. 7 at P000039; Def. 56.1 ¶ 12.) Similar incidents were documented on June 5, 2021, during a busy brunch service. (Ex. 7 at P000038; Def. 56.1 ¶ 17.)

These incidents are corroborated by the sworn accounts of five different Inwood employees. Haydee Ruiz swore in an affidavit that she witnessed Plaintiff "often disappear from work during his shifts" and that Plaintiff "was often found smoking/vaping and wandering the park" during his shifts. (Ruiz Aff. at D0039). Galinda's sworn declaration states that Plaintiff "went missing throughout every day he was at work" and that Galinda would "find him off premises in the park up the street." Galinda also observed Plaintiff using the bathroom "almost constantly" and in some cases "up to 20 or more times a day," during which time Galinda and other staff would be searching for Plaintiff. (Galinda Decl. at 3.)[3] Galinda also stated that she frequently smelled alcohol on Plaintiff's breath during the day. (Id.)

Moya, too, swore that she witnessed Plaintiff "many times on a daily basis [] disappear from work" and that Plaintiff would be found "walking the park (and vaping), locked for extended times in the bathroom, or simply missing premises." (Moya Aff. at D0036.) Ortiz swore that Plaintiff "disappear[ed] from work throughout the day without notice," (Ortiz Aff. at D0034), and Bosco testified

---

[3] Galinda's declaration states that she has been employed by Inwood Farms since the "spring of 2021," and "worked with back-of-the-house under Chef Peter Deitrick." (Galinda Decl. at 2.) Plaintiff points out, however, that Galinda also states she worked with Plaintiff from "April through July 1, 2023," during which time she personally observed Plaintiff's behavior on the job. It is facially apparent that Galinda's reference to working with Plaintiff in "2023" is a typo, as the parties agree that Plaintiff worked at Inwood from April to July of 2021.

that Plaintiff was "constantly absent from the kitchen."  (Bosco Dep. 70:8–11.)

### iii.  Baton Incidents

Defendant's records state that on May 7, 2021, Plaintiff brought to work and brandished what is commonly known as a "billy stick"—an extendible metal baton.  (Ex. 7 at P000033; Def. 56.1 ¶ 11.)  A second baton incident is documented on May 12, 2021.  (Ex. 7 at P000034; Def. 56.1 ¶ 13.)  Moya's affidavit corroborates the baton incidents and states that management warned Plaintiff not to bring weapons to work again.  (Moya Aff. at D0036.)

### iv.  Failure to Cook, Supervise, and Maintain a Clean Kitchen

Defendant's records also indicate that on June 2, 2021, two cooks were on the brink of quitting and complained that Plaintiff "did no work throughout the time, disappeared several times during the day, and left them without needed guidance."  (Ex. 7 at P000036; Def. 56.1 ¶ 15.)  On June 4, 2021, at a team meeting, Bosco, Moya, and Ramos discussed with Plaintiff his failure to actively cook or lead the line.  (Ex. 7 at P000037; Def. 56.1 ¶ 16.)  On June 16, 2021, Defendant reported that Jalil Greene resigned, citing Plaintiff's "unprofessional work habits." (Ex. 7 at P000040; Def. 56.1 ¶ 18.)

On June 21, 2021, an employee showed management photographs of filthy kitchen floors.  (Ex. 7 at P000041; Def. 56.1 ¶ 19.)

Bosco later testified that Plaintiff did not keep a clean kitchen and that the overall quality of food during Bosco's tenure was "not good."  (Bosco Dep. 80:3-21, 46:7-10.)

These reports are corroborated by the sworn affidavits of other employees.  (See, e.g. Ortiz Aff. at D0034 (recounting two-week period working with Plaintiff and describing chronic "failure to adhere to NYC DMHH rules, absenteeism," and "low . . . moral[e] due to [Plaintiff's] behavior.").  In addition, Feliz swore that she was asked in May of 2021, several weeks before Plaintiff's termination, to advise Inwood in resolving issues relating to Plaintiff's "absenteeism" and "failure to fulfill key job responsibilities."  (Feliz Aff. D0035.)  Feliz also states that she recommended Bosco hire a sous-chef to "stabilize the kitchen" and assume command in the event that Bosco resigned or was terminated.  (Id.)

    v.    Alleged Dishonesty

Finally, Defendant contends that Plaintiff lied to management about his attendance over the July 4, 2021 holiday weekend, telling management he would be present while privately telling other employees he had no intention of attending.  (Bosco Dep. 61:17-21); Ex. 10; Moya Aff. at D0036.)

## C. Plaintiff's Allegations

It is undisputed that, at the time of his hiring, Plaintiff had been diagnosed with anxiety. (Ex. 12; Def. 56.1 ¶ 5.) Plaintiff also testified that when he was first hired, he orally informed Bosco that he "had anxiety disorder." (Pl. Dep. 21:22–22:21.)

With respect to Defendant's alleged discrimination, Plaintiff's case hinges entirely on his own testimony. Specifically, Plaintiff has testified to two categories of oral comments allegedly made by Bosco.

First, Plaintiff alleges that Bosco made a series of undated pre-termination comments regarding Plaintiff's anxiety. Plaintiff testified that during his tenure, Bosco questioned him about his anxiety in connection with his bathroom breaks and absences from the kitchen, asking questions such as "Is this going to make you anxious?" and "Are you having anxiety?" (Pl. Dep. 188:2-4;21-24.) Plaintiff also claims he was "consistently questioned every time I went to the bathroom or was putting food away in the back," (Pl. Dep. 174:11-15), in front of other staff.

Second, Plaintiff alleges that Bosco made an oral comment following his termination at an exit interview later in July 2021, at which Plaintiff, Bosco, and Moya were present. (Pl. Dep. 202:6). Plaintiff claims that during this exit interview, Bosco stated "Maybe this is because of your anxiety." (Pl. Dep. 181:16–

18.)  Bosco denies making any such remark.  (Bosco Dep. 68:20-22.) Plaintiff offered different accounts of this purported conversation in his Complaint and at his deposition.[4]

## PROCEDURAL HISTORY

Plaintiff filed the Complaint on November 4, 2022, asserting six claims: discrimination and hostile work environment under the Americans with Disabilities Act ("ADA") (Count I); retaliation in violation of the ADA (Count II); discrimination and hostile work environment under the New York State Human Rights Law ("NYSHRL") (Count III); retaliation in violation of the NYSHRL (Count IV); discrimination and hostile work environment in violation of the New York City Human Rights Law ("NYCHRL") (Count V); and retaliation violation of the NYCHRL (Count VI).  (See Dkt. 1 ("Compl.") ¶¶ 50-78.)  On January 31, 2024, Defendant moved for summary judgment on all claims.  The case was reassigned to this Court on November 5, 2025.

Plaintiff has stated that he "does not oppose Defendant's motion [for summary judgment] on his remaining claims of

---

[4]In his initial Complaint, Plaintiff quoted Bosco as saying that there had been "issues with Plaintiff since day one" and that these issues "had to do with Plaintiff's anxiety."  (Compl. ¶¶ 34-35.)  However, when asked at his deposition what he recalled about the exit interview, Plaintiff stated the only thing he could recall discussing with Bosco was the length of his daily commute.  (Pl. Dep. 104:10-105:18; Def. 56.1 ¶ 57 (undisputed).)  Later in his deposition, after being shown the Complaint's allegations regarding pretext, Plaintiff—for the first time—recalled Bosco's comment of "[m]aybe this is because of your anxiety."  (Pl. Dep. 181:16-18; Def. Reply at 3-6.)  Notwithstanding the allegations in his Complaint, Plaintiff never testified under oath to the "day one" comments.

retaliation and failure to accommodate."   (Pl. Mem. at 1 n.1.) Accordingly, on consent of the Plaintiff, the Court GRANTS summary judgment on Counts II (ADA Retaliation), IV (NYSHRL Retaliation), and VI (NYCHRL Retaliation) in favor of Defendant and dismisses these claims with prejudice.

With these claims abandoned, the only remaining federal claim is Count I, which alleges both discrimination and hostile work environment in violation of the ADA.  As set forth below, the Court GRANTS summary judgment on Count I and declines to exercise supplemental jurisdiction over Plaintiff's remaining state and local claims.

## LEGAL STANDARDS

### A. Summary Judgment

Summary judgment must be granted in favor of a moving party where that party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those that "might affect the outcome of the suit under the governing law," and there is a genuine dispute where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Rojas v. Roman Catholic Diocese of Rochester, 660 F.3d 98, 104 (2d Cir. 2011) (internal quotations and citations omitted). In evaluating a motion for summary judgment, the Court must "construe all evidence in the light most favorable to the nonmoving

party, drawing all inferences and resolving all ambiguities in its favor." Dickerson v. Napolitano, 604 F.3d 732, 740 (2d Cir. 2010) (internal quotations and citations omitted).

As a general matter, "[a]t summary judgment, a plaintiff is entitled to rely on his own testimony to establish his . . . claim" and show that there is a genuine issue of material fact, Knox v. CRC Mgmt. Co., LLC, 134 F.4th 39, 48 (2d Cir. 2025), and courts must refrain from making credibility determinations at this stage. "Nevertheless, in the rare circumstance where the plaintiff relies almost exclusively on [his] own testimony, much of which is contradictory and incomplete, to establish a triable issue of fact, it may well be impossible for the court to determine whether the jury could reasonably find for the plaintiff, and thus whether there are any 'genuine' issues of material fact, without making some assessment of the plaintiff's account." Bentley v. AutoZoners, LLC, 935 F.3d 76, 86 (2d Cir. 2019) (citation omitted). Thus, while "district courts should not engage in searching, skeptical analyses" of a plaintiff's testimony, Rivera v. Rochester Genesee Reg'l Transp. Auth., 743 F.3d 11, 20 (2d Cir. 2014), "summary judgment is proper where there is nothing in the record to support plaintiff's allegations other than plaintiff's own contradictory and incomplete testimony." Id.

**B. ADA Discrimination Claims**

At the summary judgment stage, federal claims alleging employment discrimination under the ADA are analyzed under the familiar burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  Under this framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination.  If the plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its employment action.  Once the defendant provides such a reason, the burden shifts back to the plaintiff to produce evidence and carry the burden of persuasion that the proffered reason is a pretext.  See Sista v. CDC Ixis N. Am., Inc., 445 F.3d 161, 169 (2d Cir. 2006).

To establish a prima facie case under the ADA, a plaintiff must show: "(1) the defendant is covered by the ADA; (2) plaintiff suffers from or is regarded as suffering from a disability within the meaning of the ADA; (3) plaintiff was qualified to perform the essential functions of the job, with or without reasonable accommodation; and (4) plaintiff suffered an adverse employment action because of [his] disability or perceived disability." Capobianco v. City of New York, 422 F.3d 47, 56 (2d Cir. 2005). With respect to the fourth element, the ADA requires proof that discrimination was the "but-for" cause of the adverse employment action.  See Natofsky v. City of New York, 921 F.3d 337, 348 (2d

14

Cir. 2019).  "But-for" causation does not require proof that discrimination was the sole cause of the adverse action, but only that the action "would not have occurred in the absence of the [discriminatory] motive."  Kwan v. Andalex Grp., LLC, 737 F.3d 834, 846 (2d Cir. 2013).

If the plaintiff makes out a prima facie case and the defendant articulates a legitimate, nondiscriminatory reason, the plaintiff may demonstrate pretext "by demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in [Defendant's] proffered legitimate, non-[discriminatory] reasons for its actions" from which "a reasonable juror could conclude that the explanations were a pretext for a prohibited reason." Id. Critically, however, "it is not enough . . . to disbelieve the employer; the factfinder must also believe the plaintiff's explanation of intentional discrimination." Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000).

Ultimately, "'whether [summary judgment] is appropriate in any particular [discrimination] case will depend on a number of factors, including the 'probative value of the proof that the employer's explanation is false,' the 'strength of the plaintiff's prima facie case,' and the strength of the employer's case." Whitney v. Montefiore Med. Ctr., No. 21 CIV. 9623 (PAE), 2023 WL 7386400, at *21 (S.D.N.Y. Nov. 8, 2023), aff'd, 2025 WL 2101512

(2d Cir. July 28, 2025) (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 148-49 (2000)).

## C. ADA Hostile Work Environment Claims

Hostile work environment claims are cognizable under the ADA. Fox v. Costco Wholesale Corp., 918 F.3d 65, 74 (2d Cir. 2019). To prevail on such a claim, the plaintiff must produce evidence "(1) that the harassment was 'sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment,' and (2) that a specific basis exists for imputing the objectionable conduct to the employer." Id. (quoting Perry v. Ethan Allen, Inc., 115 F.3d 143, 149 (2d Cir. 1997)). As with all hostile work environment claims, mere hostility is not enough; a plaintiff must also show that "she was subjected to hostility because of her disability." Verne v. New York City Dep't of Educ., 697 F. Supp. 3d 30, 55 (S.D.N.Y. 2023) (emphasis added). However, "legitimate reprimands by an employer are not abuse." Fox, 918 F.3d at 75.

## ADA DISCRIMINATION CLAIMS

## A. Plaintiff's Prima Facie Case

Defendant argues that Plaintiff has not proven that he has an ADA-cognizable disability or that Defendant in fact regarded Plaintiff as having a disability. Although the Court agrees that Plaintiff's prima facie proof is tenuous at best, the Court need

16

not resolve that question here.  Where, as here, the employer has already articulated a legitimate, nondiscriminatory reason for the challenged employment action, "there is little to be gained in assessing whether [Plaintiff] can make out a prima facie case, as opposed to focusing on the third step of the McDonnell Douglas analysis."  Whitney, 2023 WL 7386400, at *10 (S.D.N.Y. Nov. 8, 2023). Accordingly, "'judicial inquiry into the prima facie case is usually misplaced' on motions for summary judgment."  Id. (quoting Brady v. Off. of the Sergeant at Arms, 520 F.3d 490, 493 (D.C. Cir. 2008) (Kavanaugh, J.)).  Instead, once an employer has shown a legitimate, nondiscriminatory reason for the adverse action, the "sole issue" that the Court must resolve is "whether a reasonable jury could find 'the real reason for the adverse employment decision was discrimination.'"  Id. (quoting Mandell v. County of Suffolk, 316 F.3d 368, 381 (2d Cir. 2003).[5]

Accordingly, the Court presumes without deciding that Plaintiff has established his prima facie case.

---

[5] Increasingly, courts in this District follow the framework endorsed by Justice Kavanaugh.  See, e,g. Luo v. AIK Renovation Inc., No. 22-CV-5878, 2024 WL 4444283 , at *7 (S.D.N.Y. Oct. 8, 2024) (Liman, J.); Hernandez v. Off. of Comm'r of Baseball, No. 18-CV-9035, 2021 WL 1226499, at *5 (S.D.N.Y. Mar. 31, 2021) (Oetken, J.); see also Roge v. NYP Holdings, Inc., 257 F.3d 164, 168 (2d Cir. 2001) (finding that the court "need not reach" a plaintiff's prima facie case "because the [defendant] met its burden to put forth legitimate, nondiscriminatory reasons for [plaintiff's] termination.").

**B. Defendant's Nondiscriminatory Motive**

Defendant has more than met its burden to articulate a legitimate, nondiscriminatory reason for terminating Plaintiff. The employer's burden at this stage is one of production, not persuasion, and it need only articulate an explanation that, if believed, would support a finding that the action was lawful. See Fisher v. Vassar College, 114 F.3d 1332, 1335-36 (2d Cir. 1997) (en banc).

It is well-settled that documented violations of company policy provide legitimate, nondiscriminatory reasons for termination, and the ADA "does not immunize disabled employees from discipline or discharge for" conduct that violates reasonable workplace expectations. Szuszkiewicz v. JPMorgan Chase Bank, 257 F. Supp. 3d 319, 330 (E.D.N.Y. 2017); See also LeBlanc v. United Parcel Serv., No. 11-cv-6983, 2014 WL 1407706, at *15 (S.D.N.Y. 2014).

As catalogued above, the contemporaneous Termination Letter outlines systematic misconduct and performance failures as the bases for Plaintiff's termination, including sexual harassment, chronic absenteeism, deficient kitchen environment, and dishonesty.  (Termination Letter at 1-2.)  These grounds are corroborated by Bosco's deposition testimony, five sworn employee affidavits, and thirteen contemporaneous handwritten write-ups memorializing specific incidents from April 1 through late June

2021.  (Ex. 7).  Virtually all of the conduct described by these witnesses and Defendant's evidence violates the policies in the Handbook.  Moreover, Bosco testified that the totality of these events led to Plaintiff's discharge, (see Bosco Dep. 72:21-24), consistent with the Termination Letter that Moya swore was discussed with Plaintiff extensively at the exit interview. Defendant has more than met its burden of production.

### C. Pretext

The burden thus shifts back to Plaintiff to demonstrate that Defendant's stated reasons for termination are pretextual.  "The parties' dispute at [this] third step thus boils down to this question: Would the admissible evidence permit a reasonable factfinder to find by a preponderance that [Plaintiff] was terminated because of his disability?"  Whitney, 2023 WL 7386400 at *10.

As part of that inquiry, the Court considers the "probative value of the proof that the employer's explanation is false," the "strength of the plaintiff's prima facie case," and the strength of the employer's case.  Reeves, 530 U.S. at 148-49.  Summary judgment is warranted "if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred."  Id. at 148; Whitney, 2023 WL

19

7386400, at *21 (applying Reeves framework to ADA discrimination claims).

For the following reasons, the Court finds that no reasonable jury could conclude that discrimination on the part of Plaintiff's anxiety was the but-for cause of Plaintiff's termination.

### i.   Bosco's Alleged Comments

In determining whether a comment is probative of discriminatory intent or merely a "stray remark," courts consider "(1) who made the remark (i.e., a decision-maker, a supervisor, or a low-level co-worker); (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark (i.e., whether a reasonable juror could view the remark as discriminatory); and (4) the context in which the remark was made (i.e., whether it was related to the decision-making process)." Henry v. Wyeth Pharms., Inc., 616 F.3d 134, 149 (2d Cir. 2010). No single one of these factors is dispositive.  Id.

### a. Pre-Termination Remarks

The core of Plaintiff's case turns on remarks allegedly made during his employment, including questions regarding whether Plaintiff was experiencing anxiety.  (Pl. Dep. 187:18–189:9.) Plaintiff testified that Bosco and Ramos would "ask me if it was because of my anxiety" when he used the bathroom.  (Id. 176:3-19 ("Q. What would they say? A. "'Is this because of your anxiety

disorder?'" Like what is going on [sic] I was like, 'No, I just needed to use the bathroom.'"). Plaintiff also testified that he was "consistently questioned every time I went to the bathroom or was putting food away in the back or something[,] like that about where I was and why I was." (Id. 174:11-15.) Finally, Plaintiff testified that Bosco would "time my trips to the bathroom and stand outside of the door occasionally." (Id. 188:2-4). Plaintiff was then given the opportunity to describe any other incidents other than the bathroom questioning. (Id. 190:9-13, 17-21.) Plaintiff stated: "I don't know; there were plenty of instances" and that he "[didn't] know how to speculate that." (Id. 190:15-16, 23-24).

Plaintiff fails to offer even an approximate time range for these comments, making it impossible to evaluate when the remarks were made in relation to his termination. But even accepting the frequency of the remarks, and that they were made by a supervisor, the context and content of these ambiguous remarks reveal little to no evidence of discriminatory intent. Wyeth Pharmecuticals, 616 F.3d at 149.

First, Plaintiff's testimony regarding the context for these remarks undercuts any discriminatory inference. Plaintiff testified that when he was first hired, he orally informed Bosco and Ramos that he "had anxiety disorder." (Pl. Dep. 21:22–22:21.) Plaintiff testified that Bosco told Plaintiff it was "brave of [him] to say that." (Id.) Prior to abandoning his reasonable

21

accommodation claim, Plaintiff also testified that he requested an accommodation for his anxiety by telling Bosco and Ramos that "if I feel a panic attack coming on I would let them know." (Id. 25:14-16.) In seeking an accommodation, Plaintiff thus invited the very questions regarding his anxiety and well-being that he now contends are discriminatory.

Moreover, the content of the remarks—questions about whether Plaintiff was absent because of his anxiety—is neither inherently derogatory nor otherwise indicative of bias. Plaintiff himself conceded that he "can't speculate" whether the remarks reflected legitimate concern for his well-being or animus towards his anxiety. (Pl. Dep. 191:6–192:5.)

### b. Bosco's Post-Termination Comment

That leaves Bosco's alleged post-termination comment at Plaintiff's exit interview: "Maybe this is because of your anxiety." (Pl. Dep. 181:5–21.) As an initial matter, Plaintiff's testimony regarding this remark is so incomplete and contradictory that it cannot, standing alone, create a genuine issue of material fact. In the Complaint, Plaintiff quoted Bosco as saying at the exit interview that there had been "issues since day one" that "had to do with Plaintiff's anxiety." (Compl. ¶¶ 34–35.) But when asked at his deposition what he recalled about the exit interview, Plaintiff stated the only thing he could recall discussing with Bosco was the length of his daily commute. Indeed,

22

as noted above, Plaintiff denied discussing any of the grounds for his termination at the exit interview.

Only later, when presented with the Complaint's allegations regarding pretext, did Plaintiff suddenly quote Bosco as saying "[m]aybe this is because of your anxiety" at the exit interview. (Pl. Dep. 181:16–18.)   In this latest recollection, Plaintiff offers no other details of what was said at the exit interview.

In sum, through the Complaint and his deposition, Plaintiff has offered three materially different accounts of the same conversation.  This is to say nothing of the other contradictions, including Plaintiff's testimony regarding his alleged recording of the conversation.  (Compare Pl. Dep. 181:22–24 (Q: "Did you record that [exit interview] conversation?" A: "No.") with 182:7–25 ("I think I recorded [the exit interview] on my old cell phone though.")) But Plaintiff then claimed that he had disposed of the phone.  (Id.)

The Court agrees that this is indeed the "rare case" in which "a party's inconsistent and contradictory statements transcend credibility concerns and go to the heart of whether the party has raised genuine issues of material fact to be decided by a jury." Rojas, 660 F.3d at 106 (internal quotations and citations omitted). And where, as here, "a plaintiff's testimony is riven with contradictions and no 'hard evidence' exists that could 'show that his version of the events is not wholly fanciful,' then this

testimony will be insufficient on its own to create a genuine dispute of material fact." Hernandez v. Kirby Forensic Psychiatric Hosp., No. 18-cv-8803, 2019 WL 4640054, at *2 (S.D.N.Y. Sept. 24, 2019) (Nathan, J.).

But even assuming Plaintiff's contradictory testimony is sufficient to create a genuine factual dispute, Bosco's alleged remark still does not support a reasonable inference of pretext. Plaintiff contends that this remark constitutes "direct evidence of discrimination" obviating the need for the burden-shifting framework (Pl. Mem. at 8-9), invoking Porter v. Dartmouth-Hitchcock Med. Ctr., 92 F.4th 129, 149 (2d Cir. 2024), and Back v. Hastings on Hudson Union Free Sch. Dist., 365 F.3d 107, 125 (2d Cir. 2004). But Bosco's ambiguous remark is qualitatively different from the unambiguous admissions in the cases Plaintiff cites. In Porter, the supervisor was directly asked about the termination and responded that the employee was "on disability." 92 F.4th at 143. And in Back, the plaintiff's supervisor asked plaintiff "'[p]lease do not get pregnant until I retire,'" advised that she "'wait until [her son] was in kindergarten to have another child,'" and "'reconsider whether [plaintiff] could be a mother and do this job' . . . ." 365 F.3d at 115.

Indeed, Plaintiff offers no evidence that, in suggesting that "maybe this is because of your anxiety," Bosco's use of "this" was a reference to the decision to terminate Plaintiff. Plaintiff

24

recalls no other details of the exit interview.  At best, the context of Bosco's remark—made at an exit interview during which Bosco was reviewing the grounds for Plaintiff's termination (Moya Aff. at D0036–D0038)—strongly suggests that Bosco was explaining Plaintiff's attendance issues and workplace misconduct.  This is not, as Plaintiff suggests, merely a question of competing inferences.  There is no reasonable inference to be drawn in Plaintiff's favor at all.

### c. Nexus

Finally, even if a reasonable jury could find the content of these remarks discriminatory on their face, Plaintiff fails his burden to show the necessary "nexus between the remarks and the adverse employment action."  Desrosiers v. Summit Sec. Servs., Inc., No. 21-CV-10941 (JPO), 2022 WL 13808524, at *5 (S.D.N.Y. Oct. 21, 2022).  As noted, Plaintiff's testimony is entirely silent on the temporal relation between the pre-termination comments and his eventual termination.  And Bosco's alleged post-termination comment was indisputably made after Defendant had made the decision to terminate Plaintiff.  Accordingly, the Court concludes that no reasonable juror could find that Bosco's alleged comments reflect discriminatory animus sufficient to show that Defendant's stated reasons were pretextual.

ii.    Plaintiff's Denials of Workplace Misconduct

Plaintiff also challenges the credibility of Defendant's misconduct evidence itself.  Where, as here, a defendant cites workplace misconduct as the basis for termination, "[t]he Court need not revisit whether [plaintiff] did, in fact, violate [the employer's] policies"; instead, the Court "must only determine [the employer] reasonably believed that he had violated company policies when he was terminated."  Hampton v. Jud. Branch, No. 3:18-cv-1445 (VAB), 2023 WL 4304752, at *13 (D. Conn. June 30, 2023) (quoting Ozemebhoya v. Edison Parking Corp., No. 02-cv-10057 (BSJ), 2007 WL 2593008, at *7 (S.D.N.Y. Sept. 7, 2007)).

Here, Plaintiff largely seeks to re-litigate the circumstances of his termination.  Plaintiff disputes, for example, whether he had obtained approval for his vacation or whether he in fact possessed a metal baton.  (Pl. Mem. at 10.) That is irrelevant.  What ultimately matters is whether Defendant believed these allegations at the time of termination.

Plaintiff counters that "if a discrete act, which Bosco asserts he personally observed, did not in fact happen, Bosco could not have reasonably believed that it did."  (Pl. Mem. at 9-10.) In other words, Plaintiff hypothesizes, without any evidence, that Inwood's discipline records could have been fabricated by Bosco. "A party, however, may not 'rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary

26

judgment.'" <u>Pennington v. D'Ippolito</u>, 855 F. App'x 779, 784 (2d Cir. 2021) (citation omitted).

Plaintiff offers no affirmative evidence that Bosco fabricated the termination letter or any of the incidents described therein.  On the contrary, Plaintiff's testimony is again contradictory.  When Plaintiff was asked whether Mr. Bosco went through the points in the termination letter at the exit interview, as Moya and Bosco both swore, Plaintiff insisted that this "never happened."  (Pl. Dep. 102:25; <u>see also</u> Pl. 103:25, 104:2-4 ("Q. Are you saying that Mr. Bosco did not go through the points for your termination during the exit interview? A.  Correct."))  But Plaintiff's own contemporaneous text messages with Bosco show the opposite.  (Ex. 10 at P00007) (with Plaintiff's text in green)):



Lol...It was spoken to you and documented. Stop lying. My day is fine...but I won't be lied to or manipulated. Maybe you don't remember for SOME REASON. And we parted the way we parted...it was amicable but it was also honest. We went over all the reasons one by one.

In the meeting you said "female genitalia". I recorded the whole thing

Once again, while the Court must studiously avoid credibility determinations, it is well-settled that "testimony [that is] unequivocally contradicted by [a plaintiff's] own earlier sworn and [unsworn] written statements" is insufficient to create a genuine issue of material fact.  <u>Bentley</u>, 935 F.3d at 93.  And it

is clear that Plaintiff's own text messages—in which Plaintiff expressly acknowledges Bosco's discussion of references to "genitalia" at the exit interview and states that Plaintiff "recorded the whole thing"—are irreconcilable with his testimony denying any discussion of the grounds for termination.  This self-contradicting testimony, standing alone, fails to create a genuine issue of material fact.

Moreover, while Plaintiff alludes to a theory of fabrication by Bosco, Plaintiff does not even attempt to address the sworn statements of the five other employees who corroborate Inwood's documented incidents, all of whom Plaintiff declined to depose. Plaintiff does not even allege, let alone offer evidence, that these individuals would have any reason to fabricate their own sworn testimony and frame Plaintiff.  Instead, Plaintiff simply offers blanket denials of the incidents recorded by Inwood and corroborated by its employees.

In any event, even if Plaintiff's conclusory denials created a "weak issue of fact as to the objective basis for some of [Inwood's] rationales, given the hefty record of varied reasons for dismissal, no rational factfinder could conclude that the real basis was discrimination."  Whitney, 2023 WL 7386400, at *21. After all, "it is not enough . . . to disbelieve the employer; the factfinder must also believe the plaintiff's explanation of intentional discrimination."  Weinstock, 224 F.3d at 42.  Assuming

28

arguendo that a jury were to disbelieve every one of Defendant's documented incidents, Plaintiff's threadbare and conflicting testimony would not support a reasonable inference that Plaintiff's anxiety was the but-for cause of Plaintiff's termination.

Accordingly, Plaintiff fails to create a triable issue of material fact as to pretext. Defendant's motion for summary judgment on Plaintiff's ADA discrimination claim is GRANTED.

## HOSTILE WORK ENVIRONMENT CLAIM

Plaintiff's hostile work environment claim under the ADA fares no better. First, "much like with [his] ADA-based discrimination claims, [Plaintiff] fails to produce sufficient evidence in the record that she was subjected to hostility because of [his] disability." Verne, 697 F. Supp. 3d at 55. The Court has already discussed at length why no reasonable juror could find that Bosco terminated Plaintiff on the basis of his anxiety, as opposed to his deficient performance or misconduct. Similar logic applies here. However combative Plaintiff's relationship with Bosco was, Plaintiff's threadbare and often-contradictory testimony does not create a triable issue that Bosco singled out Plaintiff for mistreatment because of his anxiety.

Even assuming otherwise, Plaintiff still fails to clear the "remarkably high hurdle" for hostile work environment claims. DelaPaz v. N.Y.C. Police Dep't, No. 01 Civ. 5416, 2003 WL 21878780,

29

at *3 (S.D.N.Y. 2003). Plaintiff's sole evidence of a hostile environment consists of Plaintiff's testimony regarding the questions from management about whether routine activities were related to Plaintiff's anxiety, as well as Bosco's alleged timing of bathroom breaks. Although Bosco's alleged timing of bathroom breaks may have annoyed Plaintiff, monitoring an employee's comings and goings is "part and parcel of any workplace environment." Hodges v. Att'y Gen. of U.S. 976 F. Supp. 2d, 480 497-98 (S.D.N.Y. 2013). And with respect to Bosco's repeated concerns over Plaintiff's attendance, as Fox itself recognized, "legitimate reprimands by an employer are not abuse." 918 F.3d at 75.[6] Taken as whole, no reasonable juror could find that Bosco's alleged comments were so "severe or pervasive to alter the conditions of [his] employment and create an abusive working environment." Fox, 918 F.3d at 74 (internal quotation marks and citations omitted).

Plaintiff's claim also fails for the independent reason that there is no evidence, other than a self-serving affidavit submitted in opposition to Defendant's motion, that Plaintiff subjectively perceived these comments as abusive at the time they were made.

---

[6] To the extent Plaintiff relies on the exit interview remark, it cannot support a hostile work environment claim because it was made after (cont'd) Plaintiff was terminated on or about July 1, 2021 (Pl. Dep. 138:12-21), and the exit interview took place later in July (Pl. Dep. 114:16-20). See Lenart v. Coach Inc., 131 F. Supp. 3d 61, 68 n.1 (S.D.N.Y. 2015) (hostile remark made after employee was terminated could not support hostile work environment claim).

Indeed, when asked at his deposition, Plaintiff himself could not say whether he felt that Bosco was mocking him:

Q. Do you think that they were – when people would do this that they were mocking you?

A. I can't speculate again.

(Pl. Dep. 190:25-191:5.)  At no point in Plaintiff's deposition did he ever state that he felt humiliated, harassed, dehumanized, or otherwise subjectively perceive the conduct as abusive, as is required to establish a hostile work environment claim.  Only when Plaintiff opposed Defendant's motion for summary judgment did Plaintiff submit a new affidavit claiming that "Bosco's repeated, public, questioning of whether I was having anxiety or going to have anxiety when performing basic acts . . . made me feel dehumanized."  (Pl. Decl. at 1.)

Plaintiff's self-serving, after-the-fact affidavit—which is facially in tension with, if not contradictory to, his deposition testimony—is equally insufficient to create a genuine issue of material fact. "Factual issues created solely by an affidavit crafted to oppose a summary judgment motion are not 'genuine' issues for trial."  Lee v. Charles, 986 F. Supp. 2d 277, 278 (S.D.N.Y. 2013) (quoting Hayes v. New York City Dep't of Corrections, 84 F.3d 614, 619 (2d Cir.1996)).  There is no triable issue of fact on this element, either.

31

Accordingly, Defendant's motion for summary judgment on Plaintiff's ADA hostile work environment claim is GRANTED.

**STATE AND CITY CLAIMS**

Having dismissed all claims over which this Court has federal question jurisdiction, the Court turns to Plaintiff's remaining claims under the NYSHRL (Count III) and NYCHRL (Count V). These claims are before the Court solely under its supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

A district court "may decline to exercise supplemental jurisdiction" over state-law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c), (c)(3). The Supreme Court has instructed that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988). And the Court of Appeals has repeatedly agreed that "if a plaintiff's federal claims are dismissed before trial, the state claims should be dismissed as well." Kolari v. N.Y.-Presbyterian Hosp., 455 F.3d 118, 122 (2d Cir. 2006) (internal quotation marks omitted); see also Garcia, 2019 WL 6878729, at *17 (declining supplemental jurisdiction after dismissing ADA claims).

Here, several factors counsel in favor of declining jurisdiction. Most significantly, the state and city claims operate under materially different (and more lenient) legal frameworks from the ADA. In contrast to the ADA, "to recover under the NYSHRL and NYCHRL, the plaintiff need only show differential treatment — that she is treated 'less well' — because of a discriminatory intent." Ebadi v. Diamond Standard, No. 1:24-CV-00103 (JLR), 2026 WL 591569, at *6 (S.D.N.Y. Mar. 3, 2026).

These substantively different legal standards counsel against retaining these claims. See Nikolakopoulos v. Macy's Inc., No. 20 Civ. 1641, 2022 WL 3903595, at *27 (S.D.N.Y. Aug. 30, 2022). Concerns of comity and respect for federalism favor allowing the state courts to address these claims in the first instance.

The Court therefore declines to exercise supplemental jurisdiction over Counts III and V, which are dismissed without prejudice to refiling in state court.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED IN PART. The resolution of each count is summarized below:

- Count I (ADA discrimination and hostile work environment) is DISMISSED with prejudice.

33

- Counts II, IV, and VI (ADA, NYSHRL, and NYCHRL retaliation) are <u>DISMISSED WITH PREJUDICE</u> in light of Plaintiff's non-opposition.

- Counts III and V (NYSHRL and NYCHRL discrimination and hostile work environment) are <u>DISMISSED WITHOUT PREJUDICE</u> to refiling in state court because the Court declines to exercise supplemental jurisdiction over these claims following the dismissal of all federal claims.

The Clerk of Court is directed to enter judgment, close all open docket numbers, and terminate this case accordingly.

**SO ORDERED.**

Dated:    New York, New York
          March 30, 2026

_____
LORETTA A. PRESKA
Senior United States District Judge

34